UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: SUBPOENA TO GENERAL CATALYST PARTNERS | Case No. 1:15-mc-91351-FDS |
| Issued in | |
| HDP SELLERS REPRESENTATIVE, LLC, | Case No. 3:14-cv-491-SDD-SCR |
| Plaintiff, | |
| vs. | |
| OCEANS ACQUISITION, INC., | |
| Defendant. _____/ | |

**NON-PARTY GENERAL CATALYST PARTNERS' OPPOSITION
TO HDP SELLERS REPRESENTATIVE, LLC'S MOTION TO COMPEL**
(and Incorporated Memorandum of Law)

Non-party General Catalyst Partners ("General Catalyst"), submits this memorandum in opposition to HDP Seller Representative, LLC's ("HDP") Motion to Compel Compliance with Subpoena [D.E. 4] ("Motion to Compel" or "Mot."), and in support thereof, states as follows:

**INTRODUCTION**

The Court should deny HDP's Motion to Compel, and award General Catalyst its reasonable attorney's fees for opposing the Motion to Compel, for three reasons: (1) HDP refused to narrow its overbroad Subpoena; (2) the Subpoena requests documents in the possession, custody, or control of the defendant in the underlying lawsuit, but HDP refuses to seek them from the defendant; and (3) with respect to the remaining documents, another non-party already produced them to HDP. Further, because a motion to dismiss HDP's Third Amended Complaint is pending in the underlying lawsuit, the Court should stay the Subpoena pending resolution of that Motion to Dismiss.

## FACTUAL BACKGROUND

General Catalyst is a venture capital firm based in Cambridge, Massachusetts, and one of General Catalyst's portfolio companies holds an indirect interest in Oceans Acquisition, Inc. ("Oceans"). (*See* Declaration of Christopher McCain, attached hereto as **Exhibit A** ("McCain Decl.") ¶ 3.) In April 2015, HDP served General Catalyst with a Subpoena to Produce Documents (the "Subpoena") in *HDP Sellers Representative, LLC v. Oceans Acquisition, Inc.*, No. 14-cv-491 (M.D. La.) (the "Underlying Lawsuit"). (*See* Mot. Ex. D at 8.) In the Underlying Lawsuit, HDP alleges that Oceans breached a promissory note between itself and Oceans (the "Note"). (*See* Mot. Ex. C.)

The Note is subordinated to a Senior Credit Facility Agreement. (*See id.* ¶ 8.) The senior lender sold its Senior Credit Facility Agreement to another company, Elm Park Capital Management, LLC ("Elm Park"), and Elm Park then entered into an Amended and Restated Senior Credit Facility Agreement with Oceans. (*See id.* ¶ 14.) HDP contends those transactions constituted a refinancing and that the Note is therefore payable now, rather than on the June 27, 2018 maturity date. (*See id.* ¶¶ 7, 19.)

In connection with that dispute, HDP seeks the following documents from General Catalyst:

> 1. [A]ll communications, including correspondence and emails, between You and employees, agents, and representatives of [Elm Park], pertaining or related to Elm Park's purchase of the December 27, 2012 Senior Credit Facility Agreement.
>
> 2. [A]ll communications, including correspondence and emails, between You and employees, agents, and representatives of [Elm Park], pertaining or related to the September 29, 2014 Amended and Restated Senior Credit Facility Agreement between Oceans and [Elm Park].
>
> 3. [A]ll communications, including correspondence and emails, between You and any Oceans entity, with regard to Elm Park's purchase of the Senior

>Credit Facility Agreement and the Amended and Restated Credit Facility Agreement between Oceans and Elm Park.
>
>4.     [A]ll agreements and contracts between You and [Elm Park] pertaining or related to [Elm Park's] purchase of the Senior Credit Facility Agreement and the restructuring or refinancing of the Senior Credit Facility Agreement.

(Mot. Ex. D at 7.)

Because the Subpoena seeks thousands of documents that are irrelevant, already produced by another non-party, or available from the defendant in the Underlying Lawsuit, General Catalyst objected to the Subpoena. (*See* Mot. Ex. E.) In an effort to compromise, General Catalyst was willing to help HDP get a narrow set of documents, so it invited HDP to provide specific search terms to make the document collection less burdensome. (*See* Oct. 26, 2015 Email from Christopher McCain, General Counsel for General Catalyst, to Ryan Falgoust, counsel for HDP, attached hereto as **Exhibit B** ("Thanks again for your time on Friday. I appreciate you looking into ways in which the burdens with respect to any production on our part as a third party can be reduced through the use of search terms, time ranges, individuals, etc.").) In response, HDP filed the Motion to Compel. A few days later, HDP stated that it would not narrow the scope of its Subpoena. (*See* Nov. 2, 2015 Email from Ryan Falgoust, counsel for HDP, to Christopher McCain, General Counsel for General Catalyst, attached hereto as **Exhibit C** ("By no means am I providing an exhaustive list or am I attempting to narrow the requests.").)

## LEGAL STANDARD

Rule 45 provides special protections to a non-party by prohibiting the issuing party from imposing "undue burden or expense" on the non-party. *See Rockstar Consortium US LP & Netstar Techs. LLC v. Google Inc.*, No. 14-91322, 2015 U.S. Dist. LEXIS 139770, at *12 (D. Mass. Oct. 14, 2015) (Saylor, J.) (citing *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("Concern for the unwanted burden thrust upon non-parties is a factor entitled to

special weight in evaluating the balance of competing discovery needs.")).  Whether a subpoena imposes "undue burden" on a non-party depends upon "(1) the relevance of the information requested; (2) the need of the non-party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; (6) the burden imposed; and (7) the expense and inconvenience to the non-party."  *LSI Corp. v. Vizio, Inc.*, No. 12-mc-91068, 2012 WL 1926924, at *3 (D. Mass. May 24, 2012).

## ARGUMENT

### I. The Subpoena is overbroad and seeks irrelevant information, yet HDP refused General Catalyst's request to narrow the scope of the Subpoena.

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  As discussed below, the Subpoena imposes undue burden and cost on General Catalyst because it seeks copious, irrelevant documents.  General Catalyst thus asked HDP to narrow the universe of responsive documents, but HDP would not.  (*See* Exs. B & C.)

"The party issuing the subpoena has the burden of establishing that the requested information is relevant to its claims or defenses."  *Enargy Power (Shenzhen) Co. v. Wang*, No. 13-11348, 2014 U.S. Dist. LEXIS 130994, at *6 (D. Mass. Sept. 17, 2014) (Boal, J.) (quashing subpoena).  Document requests are overbroad if they seek "all" documents or communications "related to" a subject without any limitation in scope or time.  *See, e.g.*, *Rockstar*, 2015 U.S. Dist. LEXIS 139770, at *20 ("Each individual request that begins with 'all documents and things …' appears to have been overly broad and unduly burdensome."); *see also Bourne v. Arruda*, No. 10-cv-393, 2012 U.S. Dist. LEXIS 63233, at *11-13 (D.N.H. May 3, 2012) (denying plaintiff's motion to compel because plaintiff's use of "all" was unlimited in time or scope).

4

Here, HDP is abusing its subpoena power. It seeks "all" communications between General Catalyst and Elm Park "pertaining or related to" Elm Park's purchase of the Senior Credit Facility Agreement (the "Purchase") and "pertaining or related to" the Amended and Restated Senior Credit Facility Agreement (the "Amended Agreement") (the Senior Credit Facility Agreement and Amended Agreement, collectively "the Agreements"). (*See* Mot. Ex. E at 3). HDP also seeks "all" communications between General Catalyst "and any Oceans entity, with regard to" both the Purchase and the Amended Agreement. (*See id.*)

General Catalyst is not a party to either of the Agreements, and General Catalyst was not a party to the Purchase. (*See* McCain Decl. ¶¶ 5-6.) However, because General Catalyst maintains a substantial, indirect investment in Oceans, General Catalyst was copied on many of the communications concerning the negotiations, drafting, and closing of the Purchase and the Amended Agreement. (*See id.* ¶ 7.) Each of the Agreements comprises more than fifty separate documents, plus dozens of schedules and exhibits, nearly all of which are unrelated to HDP's allegations in the Complaint. (*See id.* ¶ 8.) Unsurprisingly, the negotiations that led to the executed versions of the Agreements involved thousands of communications. (*See id.* ¶ 9.) The Purchase was a complex transaction that involved daily communications for several months as the parties negotiated, drafted, and revised the relevant documents. (*See id.* ¶ 10.)

HDP fails to explain why it needs all of the communications concerning the Amended Agreement and the Purchase to resolve an issue in the Underlying Lawsuit. Instead, HDP argues that all of those communications are "clearly relevant" because they "are related to HDP's allegation that the Note was refinanced." (*See* Mot. at 6.)

First, HDP cannot carry its burden with a conclusory assertion of relevance. *See Wittingham v. Amherst College*, 164 F.R.D. 124, 127 (D. Mass. 1995) (denying motion to

compel production of non-party files because plaintiff offered only a conclusory assertion of their relevance).

Second, HDP has not alleged in the Underlying Lawsuit that the Note was refinanced. (*See* Mot. Ex. C.)  Rather, HDP alleges that the Senior Credit Facility Agreement was refinanced.  HDP's confusion concerning its own legal theory is academic.  HDP already has copies of the Agreements, the Note, and all of the closing documents for the Purchase.  HDP does not need thousands of communications from a non-party to see whether the Amended Agreement refinanced the Senior Credit Facility Agreement.

Third, the Subpoena is not narrowly tailored to capture only documents that show the Senior Credit Facility Agreement "was refinanced."  The Subpoena does not even use the word "refinance" (or other words to that effect), and HDP refused to identify specific custodians or let General Catalyst use search terms to collect a manageable number of documents.

> **II.    HDP has failed to ease the burden on non-party General Catalyst by, for example, seeking the information from a party to the Underlying Lawsuit.**

The Court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).  Courts in this district have interpreted Rule 45 to "require[] a party to obtain documents, when reasonably available, from an adverse party rather than a non-party." *See Rockstar*, 2015 U.S. Dist. LEXIS 139770, at *14-15; *see also Accusoft Corp. v. Quest Diagnostics, Inc.*, No. 12-40007, 2012 WL 1358662, at *10 (D. Mass. Apr. 18, 2012) (quashing subpoena because documents could be more easily obtained from a party).  The law does not require a non-party to "accept [discovery's] travails," as though it were a party to the litigation. *See Cusumano*, 162 F.3d at 717.

HDP concedes that it seeks documents from General Catalyst that it could get from Oceans, the defendant in the Underlying Lawsuit.  However, HDP argues that this Court's well-established law, requiring HDP to get the documents from Oceans, "lacks merit."  (*See* Mot. at 8.)  In derogation of this Court's precedent, HDP insists that if the documents are in the physical custody of a non-party, HDP may obtain the documents by issuing a Rule 45 subpoena, even if the documents are in the possession custody or control of a party to the lawsuit. (*See id*. at 6.)[1]

Further, HDP unabashedly seeks documents from General Catalyst that HDP already sought and received from another non-party, Elm Park.  On December 2, 2014, HDP served Elm Park with a subpoena that seeks, among other things, all communications between General Catalyst and Elm Park.  (*See* HDP's Subpoena to Elm Park, attached hereto as **Exhibit D** ("Elm Park Subpoena").)[2]  Excluding communications between General Catalyst and Oceans, which HDP must get from Oceans, the Elm Park Subpoena encompasses <u>everything</u> that HDP seeks from General Catalyst.  Elm Park has already produced <u>thousands</u> of pages of documents and communications to HDP in response to the Elm Park Subpoena.  (*See* March 27, 2015 Letter from Counsel for Elm Park to Counsel for HDP, attached hereto as **Exhibit F**.)  Thus, as a matter of law, the Subpoena imposes undue burden and cost on General Catalyst.

### III.   At a minimum, the Court should stay compliance with the Subpoena because a motion to dismiss is pending in the underlying litigation.

If this Court determines that General Catalyst must comply with the Subpoena in whole or in part, it should not require General Catalyst to produce documents unless and until the

---

[1] To support this position, HDP cites to *Lynn v. Monarch Recovery Mgmt.*, 285 F.R.D. 350 (D. Md. 2012).  In *Lynn*, the court wrote, "If documents responsive to this request are <u>not in Defendant's possession or custody</u>, but are in the physical custody of a non-party telephone carrier … Plaintiff may obtain the documents by issuing a Fed. R. Civ. P. 45 subpoena to the telephone carrier." *Id.* at 361 (emphasis added).  *Lynn* undermines, rather than supports, HDP's position.

[2] A chart comparing the document requests in the Subpoena to the document requests in the Elm Park Subpoena is attached hereto as **Exhibit E**.

Middle District of Louisiana resolves Oceans' pending Motion to Dismiss. *See* No. 14-cv-491 [D.E. 55] (M.D. La. Oct. 5, 2015); *see also Skynet Corp. v. Slattery*, No. 06-cv-218, 2007 U.S. Dist. LEXIS 18842, at *30 n.5 (D.N.H. Mar. 13, 2007) (noting that the Court had "issued an order on the motion to quash staying the deposition in question until the motion to dismiss was ruled upon").

### IV. The Court should award General Catalyst the reasonable attorney's fees expended in opposing HDP's Motion to Compel.

Because HDP has made no attempt to "take reasonable steps to avoid imposing undue burden or expense on" General Catalyst, the Court "*must* … impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *See Rockstar*, 2015 U.S. Dist. LEXIS 139770, at *14 (citing Fed. R. Civ. P. 45(d)(1)) (emphasis in original). General Catalyst therefore requests that the Court impose an appropriate sanction against HDP, including, but not limited to, an award for the reasonable attorney's fees General Catalyst expended in opposing HDP's Motion to Compel.

### CONCLUSION

WHEREFORE, in light of the foregoing, the Court should deny HDP Seller Representative, LLC's Motion to Compel Compliance with Subpoena to General Catalyst Partners and impose an appropriate sanction against HDP, including, but not limited to, an award for the reasonable attorney's fees expended in opposing this motion, together with such other relief the Court deems just and proper.

**McDERMOTT WILL & EMERY LLP**

By:       /s/ Matthew E. Leno

    Matthew E. Leno (BBO 657152)
    MCDERMOTT WILL & EMERY LLP
    28 State Street
    Boston, Massachusetts 02109
    Tel. 617-535-4000
    Fax. 617-535-3800

    Robert M. Kline (*pro hac vice* pending)
    MCDERMOTT WILL & EMERY LLP
    333 Avenue of the Americas, Ste. 4500
    Miami, Florida 33131
    Tel.  305.358.3500
    Fax.  305.347.6500

*Counsel for General Catalyst Partners*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true copy of the above document was served upon the attorney of record for each other party by mail and notices of electronic filing generated CM/ECF on **November 13, 2015**.

                                                /s/ Matthew E. Leno
                                               Matthew E. Leno

DM_US 67281683-7.090634.0030